ORIGINAL

# In the United States Court of Federal Claims

No. 17-1084C
(Filed: April 5, 2018)

FILED
APR - 5 2018
U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
                                                   *
ROGER CHARLES DAY, JR.,                            *
                                                   *
            Plaintiff,                             *
                                                   *
      v.                                           *
                                                   *
THE UNITED STATES,                                 *
                                                   *
            Defendant.                             *
                                                   *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

## ORDER OF DISMISSAL

**WILLIAMS**, Judge.

This matter comes before the Court on Defendant's motion to dismiss. For the reasons stated below, Defendant's motion to dismiss is granted.

### Background[1]

Plaintiff pro se Roger Charles Day, Jr. is incarcerated at United States Penitentiary Terre Haute in Terre Haute, Indiana. On December 15, 2011, Plaintiff was sentenced to 1260 months in prison on charges of conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, and conspiracy to smuggle goods. Am. Compl. App., at 1-2. As part of his judgment, Plaintiff was ordered to pay a fine of $3,000,000, and to pay restitution to the Defense Logistics Agency in the amount of $6,256,710.44. Id. at 5. Plaintiff was also ordered to forfeit assets to satisfy the judgment against him. Id. at 6.

Plaintiff argues that he and hundreds of thousands of other federal inmates do not receive full credit for payments made through the Inmate Financial Responsibility Program ("IFRP"), a program which allows inmates to make payments on any financial obligations they owe. Am. Compl. 2, App., at 7. Plaintiff claims that he is a representative of a class comprised of "all federally convicted persons" who had "'criminal monetary penalties'" imposed as part of their

---

[1]   This background is derived from Plaintiff's amended complaint and appendix.

7016 3010 0000 4308 4539

judgments and have been subject to the IFRP "and/or had assets forfeited which upon said forfeiture were to be credited and/or deducted" from each prisoner's penalty. Am. Compl. 2.

The IFRP is a voluntary program, but if an inmate refuses to participate in the program, he or she may lose certain privileges as a result. 28 C.F.R. § 545.11(d); Fontanez v. O'Brien, 807 F.3d 84, 85 (4th Cir. 2015). As part of the IFRP, Plaintiff signed an inmate financial plan, stating that he would pay $50 per month toward satisfaction of his financial obligations. Am. Compl. App., at 13. Plaintiff does not contest his obligation to make these payments, but rather alleges that the money paid under the IFRP is being taken by Defendant and not being given to his victims as restitution. Am. Compl. 3. Plaintiff argues that the IFRP payments are being "diverted" to other accounts controlled by Department of Justice and Federal Bureau of Prisons officials, as well as the Clerks of the United States District Courts, to fund a "criminal enterprise," rather than being given to the victims as restitution. Id.

Plaintiff seeks certification of a class, appointment of class counsel, trial by jury, and an order to show cause requiring Defendant to perform a full accounting of all IFRP payments, all payments credited from the Clerks of the District Courts, a list of all forfeited money and assets, a list of all liquidated assets and their value, and the credit given toward each class member's monetary penalty. Id. at 4. Plaintiff alleges that more than $1,000,000,000 "is in the ultimate control of accounts" owned by Defendant due to a failure to fully credit IFRP payments and forfeited assets of the class members. Id. at 3.

## Discussion

Plaintiff has the burden of establishing subject-matter jurisdiction in this Court. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The Court must dismiss the action if it finds subject-matter jurisdiction to be lacking. Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007). The Court assumes all factual allegations as true, and will construe the complaint in a manner most favorable to Plaintiff when ruling on a motion to dismiss pursuant to Rule 12(b)(1). Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

The filings of pro se litigants are held to "'less stringent standards than formal pleadings drafted by lawyers.'" Naskar v. United States, 82 Fed. Cl. 319, 320 (2008) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). However, pro se plaintiffs still bear the burden of establishing the Court's jurisdiction and must do so by a preponderance of the evidence. See Reynolds, 846 F.2d at 748; Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

The Tucker Act provides that this Court:

> shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). The Tucker Act is not money-mandating, but rather is a jurisdictional statute. United States v. Testan, 424 U.S. 392, 398 (1976). To establish jurisdiction, a plaintiff must seek money damages under a source of substantive law. "[T]he claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as

mandating compensation by the Federal Government for the damages sustained.'" United States v. Mitchell, 463 U.S. 206, 216-17 (1983) (quoting Testan, 424 U.S. at 400); see Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008) ("[A] plaintiff must identify a separate source of substantive law that creates the right to money damages." (internal citation and quotation marks omitted)).

To the extent that Plaintiff seeks to rely on 28 C.F.R. § 545.10 or 18 U.S.C. § 3664 as bases for jurisdiction in this Court, neither of these authorities gives rise to a money-mandating claim. Section 545.10 of Title 28 of the Code of Federal Regulations sets forth the purpose and scope of the IFRP. This section provides:

> [t]he Bureau of Prisons encourages each sentenced inmate to meet his or her legitimate financial obligations. As part of the initial classification process, staff will assist the inmate in developing a financial plan for meeting those obligations, and at subsequent program reviews, staff shall consider the inmate's efforts to fulfill those obligations as indicative of that individual's acceptance and demonstrated level of responsibility. The provisions of this rule apply to all inmates in federal facilities, except: Study and observation cases, pretrial detainees, and inmates in holdover status pending designation.

Id. There is no statute establishing the IFRP, as it is a program created by the Bureau of Prisons. See United States v. Lemoine, 546 F.3d 1042, 1048-49 (9th Cir. 2008). Section 3664 of Title 18 of the United States Code, Procedure for Issuance and Enforcement of Order of Restitution, specifically states that it does not give rise to a cause of action against the United States. 18 U.S.C. § 3664(p) (2012).

The gravamen of Plaintiff's complaint is that the inmate financial plan under the IFRP is a contract with the Government and that Defendant breached that contract by failing to fully credit his IFRP payments toward his fines and restitution. Plaintiff argues that the entire amount being taken from his account each month is not being put toward his fines and restitution, and that instead, Defendant is keeping an unspecified amount of his monthly payment. Plaintiff argues that the

> promise made or obligation assumed by the government in exchange for the plaintiff's (and class members) IFRP participation is "processing" inmate financial responsibility program (IFRP) payments and "oversight responsibility" and "transfer" of the voluntarily paid funds to the appropriate component(s) including assurance of accurate data processing and prompt correction of errors identified by the "Deposit Fund Staff" which implies accurate audit procedures.

Pl.'s Reply 1.

Although this Court has jurisdiction over contract claims, Plaintiff has failed to allege facts giving rise to an express or implied contract between himself and the United States. See Kam-Almaz v. United States, 682 F.3d 1364, 1368 (Fed. Cir. 2012) (stating that an implied-in-fact contract "requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) actual authority on the part of the government's representative to bind the government in contract" (internal citation and quotation marks omitted)). Defendant has not

3

undertaken any promise or obligation in exchange for Plaintiff's participation in the IFRP. See Shelton v. United States, 539 Fed. App'x 1011, 1013 (Fed. Cir. 2013) (per curiam). In Shelton, the United States Court of Appeals for the Federal Circuit found that despite the presence of the word contract[2] in the title of the inmate financial plan,

> that document [did] not evince any promise made or obligation assumed by the government in exchange for Appellant's participation in the IFRP. The document concerns only Appellant's understanding of the IFRP and his pledge to submit payments according to the specified schedule, and it indicates that prison staff participated only in providing information on the IFRP program and witnessing Appellant's signature. In short, the signed financial plan does not reflect consideration of any sort offered by the government in return for Appellant's participation.

Id. As such, Plaintiff has failed to state a claim upon which relief can be granted in asserting a breach of contract. See Powers v. United States, No. 14-760C, 2015 WL 4931482, at *8 (Fed. Cl. Aug. 18, 2015) (finding that payment agreements, such as the inmate financial plan, "are part of a broader administrative and statutory scheme" governing inmate trust accounts, and that because inmate trust accounts are "automatically established for each inmate while he or she is held within a prison facility under the custody of the United States Attorney General or an appropriate designee, the contractual elements of offer, acceptance, and consideration do not exist"); Dudley v. United States, 61 Fed. Cl. 685, 688 (2004) (stating that withdrawals from inmate accounts are statutory, not contractual).

Plaintiff also appears to argue that Defendant's failure to properly credit his IFRP payments to his victims for restitution constitutes a Fifth Amendment taking. Although this Court has jurisdiction over Fifth Amendment takings claims, which requires payment of "just" compensation for property taken for public use, Plaintiff has not alleged facts giving rise to a Fifth Amendment taking. Plaintiff has not sought monetary relief. Instead, Plaintiff seeks an order directing an accounting for the amounts he claims were misdirected. This Court lacks jurisdiction to render an accounting, as that is an equitable remedy that can only be granted ancillary to a monetary judgment. E. Shawnee Tribe of Okla. v. United States, 582 F.3d 1306, 1308 (Fed. Cir. 2009), cert. granted and judgment vacated and remanded on other grounds by United States v. E. Shawnee Tribe of Okla., 563 U.S. 971 (2011). In essence, Plaintiff claims that the monies he authorized to be taken from his account were not used for a purpose he specified. Plaintiff has not stated a claim for a per se taking, as he has not alleged any physical occupation or destruction of property, nor has Plaintiff pointed to any regulatory action restricting his use of his property, so as to give rise to a regulatory taking. Klamath Irrigation v. United States, 129 Fed. Cl. 722, 730 (2016). Plaintiff has not alleged that the funds paid from his inmate account under the IFRP have been taken for public use. See Welty v. United States, 135 Fed. Cl. 538, 550 (2017) (stating that for there to be public use, "the government's actions must appropriate a benefit for the government at the expense of the property owner" (internal citation and quotation marks omitted)). An alleged misallocation

---

[2] Unlike in Shelton v. United States, the title of Plaintiff's inmate financial plan does not contain the word contract. Compare Am. Compl. App., at 13, with Shelton v. United States, 539 Fed. App'x 1011, 1013 (Fed. Cir. 2013) (per curiam).

of funds Plaintiff authorized to be deducted from his inmate account is not actionable as a Fifth Amendment taking.

Plaintiff also appears to allege that officials from the Department of Justice and the Bureau of Prisons, as well as the Clerks of the United States District Courts, are engaged in fraud and racketeering due to their alleged diversion of IFRP payments and forfeited assets into Government accounts for unspecified uses, as opposed to properly crediting Plaintiff and other federal inmates toward payment of their financial obligations. However, this Court does not have jurisdiction over criminal matters. Dumont v. United States, 85 Fed. Cl. 425, 430 (2009) (finding that this Court "does not exercise jurisdiction over criminal claims, including those arising under the RICO Act"). Nor does this Court have jurisdiction over claims sounding in tort. Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008).

## Conclusion

Defendant's motion to dismiss is **GRANTED**.[3] The Clerk is directed to dismiss this action.

*Mary Ellen Coster Williams*
MARY ELLEN COSTER WILLIAMS
Judge

---

[3] Plaintiff also filed a "motion for class counsel," a "motion for a show cause order," and a motion for partial summary judgment. These motions are denied as moot.